VIGIL, Judge (dissenting). {51} I conclude STOP is outside of the legislative authority granted to Albuquerque and unconstitutional. Since the majority disagrees, I dissent. STOP declares the act of driving over the posted speed limit to be a nuisance. After the nuisance of driving is captured by a camera speed device (CSD), the owner of the vehicle is issued a “fine.” STOP further declares that all owners are strictly and vicariously liable for the nuisance. Thus, STOP makes the mere owner of the vehicle absolutely liable for the fine imposed because of another person’s act of driving. It therefore appears that the purpose of this scheme is to generate revenue income for Albuquerque, and not to abate the nuisance of speeding. FACTS {52} An Albuquerque police officer issued Titus a $100 STOP fine after a CSD detected that a vehicle registered to him was exceeding the posted speed limit on October 1, 2006. STOP, Section 7-ll-5(B) (stating that a police officer shall cause a STOP fine to be delivered to the registered owner after reviewing the CSD evidence). Titus requested an administrative hearing to contest the STOP fine. At the hearing the City presented no evidence relating to the identity of the driver, and Titus proved by his passport that at the time of the offense, he was out of the country in Germany. When Titus declined to “nominate” who the actual driver was, the Albuquerque hearing officer upheld the $100 STOP fine against Titus because he is the owner of the vehicle. {53} An Albuquerque police officer issued Titus a second $100 STOP fine when a separate vehicle, which was also registered to Titus, was detected by a CSD exceeding the posted speed limit on August 30, 2007. Titus again requested an administrative hearing. As in the first case, the City presented no evidence who the driver was; Titus again testified he was not in Albuquerque at the day and time of the offense; Titus again declined to “nominate” who the actual driver was; and the Albuquerque hearing officer upheld the second $100 STOP fine against Titus because he is the owner of the vehicle. Titus appealed both administrative decisions to the district court, where the cases were consolidated, and affirmed. Titus appeals. DISCUSSION {54} Albuquerque is a chartered home rule municipality. As such, the City of Albuquerque “may exercise all legislative powers and perform all functions not expressly denied by general law or charter.” N.M. Const, art. X, § 6(D). In addition, NMSA 1978, Section 3-17-1 (1993) directs that “The governing body of a municipality may adopt ordinances or resolutions not inconsistent with the laws of New Mexico.” We have previously stated that while the inquiry under both provisions is similar, they merit separate treatment. New Mexicans for Free Enter. v. The City of Santa Fe, 2006-NMCA-007, ¶ 39, 138 N.M. 785, 126 P.3d 1149. In this ease, however, I do not believe that the discussion would materially differ under either consideration. The question before us is whether STOP as adopted is “expressly denied by general law” under the constitutional provision and whether STOP is “inconsistent with the laws of New Mexico” under the statute. I conclude that the STOP ordinance fails on both points. {55} In its “FINDINGS AND INTENT” the Council finds that some drivers in Albuquerque repeatedly violate posted speed limits. City Council finds that state law against speeding is inadequate to preserve public safety in Albuquerque. City Council finds that photographic and electronic devices that measure speed are accurate and reliable. City Council finds that implementation of enforcement of speed limits by means of photographic and electronic equipment will abate the nuisance of speeding. (Emphasis added.) STOP, Section 7-11-1(D). It is on the basis of “some drivers” who “repeatedly violate” posted speed limits that speeding is defined as a nuisance. Although STOP’S stated intention is to dissuade the act of driving in violation of posted speed limits, STOP nevertheless makes the registered owner “strictly and vicariously liable for the violation.” STOP, Section 7-ll-5(B). Further, “If there is more than one registered owner, all registered owners shall be jointly and severally liable.” Id. {56} The Ordinance violates Section 3-18-17. This statute gives municipalities, including chartered home ruled municipalities, the authority to adopt ordinances defining and abating a nuisance. In pertinent part, the statute provides in Subsection (A) that a municipality may by ordinance “define a nuisance, abate a nuisance and impose penalties upon a person who creates or allows a nuisance to exist}.]” (Emphasis added.) Thus, the statute clearly limits the right of a city to penalize a person who “creates or allows” the defined nuisance to exist. {57} The imposition of strict and vicarious liability is contrary to the plain, unambiguous meaning of the limitation in Section 3-18-17. STOP imposes strict and vicarious liability, but it does not define these terms. In general, the term strict liability” is understood to mean a case “when neither care nor negligence, neither good nor bad faith, neither knowledge nor ignorance will save defendant.” Black’s Law Dictionary 1591 (Rev. 4th ed. 1968). Similarly, a general understanding of vicarious liability is that notwithstanding complete innocence, one is held responsible for harm caused by the wrongful act of another. See Saiz v. Belen Sch. Dist., 113 N.M. 387, 399, 827 P.2d 102, 114 (1992). On the other hand, Section 3-18-17(A) limits who may be penalized: “a person who creates or allows a nuisance to exist.” The plain meaning of this statutory phrase clearly requires more than mere ownership, without more, of a motor vehicle. {58} The unabridged dictionary in pertinent part defines “create” to mean “to bring about by a course of action or behavior,” and it defines “allow” in pertinent part to mean “to permit by way of concession” or “to permit by neglecting to restrain or prevent.” Webster’s Third New Int’l Dictionary 532, 58 (unabridged) (2002). Mere ownership of a motor vehicle does not satisfy the concept of creating or allowing the vehicle to be a nuisance. Burton’s Legal Thesaurus 134 (3d ed. 1998) describes the concept of “create” as meaning to: be responsible, be the agent, be the author, be the cause of, be the reason, beget, bring about, bring into being, bring on, bring out, bring to effect, bring to pass, build, carve, cause, cause to exist, chisel, compose, conceive, concoct, constitute, construct, contribute, contrive, creare, develop, devise, effect, engender, engineer, erect, establish, fabricate, fashion, fingere, forge, form, formulate, found, frame, generate, give birth to, give origin to, give rise to, ideate, improvise, inaugurate, induce, initiate, institute, invent, kindle, launch, lay the foundations, make, make up, occasion, organize, originate, pattern, procreate, produce, put together, set going, set up, shape, spawn, start, think up}.] In a similar vein, the same authority describes “allow” as meaning to: accredit, acknowledge, approve, certify, charter, commission, empower, enable, endorse, enfranchise, entitle, give, give authority, give leave, give permission, grant, grant permission, invest, legalize, legitimatize, license, permit, privilege, qualify, sanction, support, sustain, vouchsafe, warrant!.] Burton’s Legal Thesaurus, swpra, at 27. {59} The concept of strict and vicarious liability is clearly inconsistent with the limitation in Section 3-18-17, that a city is only authorized to penalize a “person who creates or allows a nuisance to exist.” Something more than mere ownership is required. The mere owner of a vehicle-even an owner who allows another person to drive the vehicle, without more, is not a person who “creates or allows a nuisance to exist.” In this case, contrary to Section 3-18-17, STOP penalizes mere ownership of a vehicle driven by another person over the posted speed limit. Thus, STOP violates Section 3-18-17. {60} The majority repeatedly asserts that Titus did not “pursue” any of the “defenses” recognized by STOP. Majority Opinion ¶ 4. The majority goes so far as to conclude that STOP complies with Section 3-18-17 because “the strict and vicarious liability provision of STOP is limited” in that “Vehicle owners are held strictly and vicariously liable only for those STOP violations for which they are unable or unwilling to prove a defense, or where they are unsuccessful in asserting a defense.” Majority Opinion ¶ 27. Thus, “In our view, it is sufficient that Titus is the registered owner of the vehicles that were speeding and proffered no defense.” Majority Opinion ¶25. These assertions do not withstand scrutiny. {61} First, and foremost, STOP provides on the one hand that at a hearing contesting a STOP fine, “The Department has the burden to prove by a preponderance of the evidence that the violation occurred.” STOP, Section 7-ll-5(F). On the other hand, in asserting the defenses set forth in STOP, Section 7-ll-5(G), the respondent “has the burden of proof’ including the defense that “The evidence does not show that a violation was committed involving the subject vehicle.” STOP, Section 7 — 11—5(G)(3). Thus, the City can either assert it has proven the violation or that the respondent owner has failed to prove no offense occurred. Either way, the City wins and the owner loses. {62} An additional “defense,” the one primarily relied on by the majority, is that the registered owner was not driving the vehicle at the time of the violation. STOP, Section 7-ll-5(G)(4). This defense is asserted by “nominating” who the actual driver of the car was at the time of the violation. Id. However, this is an empty defense. Even if the registered owner makes a proper nomination pursuant to STOP, “[i]f the nominee appeals denying he or she was the driver or defaults [by failing to appear], the city may proceed against the registered owner by issuing a subsequent STOP fine to the registered owner.” STOP, Section 7-ll-5(D)(3). STOP further specifically provides, “The registered owner is liable for a default by a nominee [for a failure to pay the fine].” STOP, Section 7-11-5(E). Therefore, even if a nominee admits that he or she was driving on the occasion in question, if the nominee does not pay the fine, “The registered owner is hable.” Thus, this is really no defense at all, and STOP truly makes the registered owner strictly and vicariously liable for a speeding violation. {63} STOP not only exceeds and violates the authority granted by Section 3-18-17, it is also inconsistent with two additional statutes. NMSA 1978, Section 66-8-121 (1978) is entitled “Offenses by persons owning or controlling vehicles,” and it provides, “It is unlawful for the owner, or any other person, employing or otherwise directing the driver of any vehicle to require or to permit the operation of such vehicle upon a highway in any manner contrary to law.” (Emphasis added.) The owner of a vehicle only violates the statute if the owner requires or permits the operation of the vehicle in a manner contrary to law. This requires participation or expressly allowing the vehicle to be operated in violation of state law. Secondly, STOP is contrary to Section 30-8-1, which defines a public nuisance. The statute provides, “A public nuisance consists of knowingly creating, performing or maintaining anything affecting any number of citizens without lawful authority.” (Emphasis added.) Again, this statute requires the actor to “knowingly” create, perform, or maintain the public nuisance. For the reasons I have already pointed out, the imposition of strict and vicarious liability in STOP is inconsistent with these statutes as well. {64} In addition, the STOP findings do not support holding a registered owner strictly and vicariously liable for a speeding offense where the owner is not the driver or otherwise culpable. In the findings and intent, the Council “declares that a vehicle used to violate this article is the instrumentality of a nuisance that must be abated in the city.” STOP, Section 7-ll-l(E) (emphasis added). Consistent with this finding and intent, STOP defines a “nuisance” as “[t]he act of operating a vehicle in violation of this article.” STOP, Section 7-11-3 (emphasis added). Thus, STOP itself recognizes that an automobile is not at all times and under all circumstances a nuisance. It is only when it is driven by an operator in violation of the speeding law that it becomes a “nuisance” under STOP. Importantly, Albuquerque itself acknowledges this distinction. In its answer brief, Albuquerque asserts, “Driving and cars are not necessarily nuisances by nature, but become such when the car is an instrumentality driven recklessly through an intersection or, for another example, a school zone.” This merely states the obvious. {65} A nuisance in fact “is usually defined as an activity or structure which is not a nuisance by nature, but which becomes so because of such factors as surroundings, locality, and the manner in which it is conducted or managed.” Vill. of Los Ranchos, 119 N.M. at 164, 889 P.2d at 199. Thus, under STOP itself, a vehicle only becomes the instrumentality of a nuisance when it is driven over the posted speed limit. A nuisance per se does not result from the mere ownership of a motor vehicle. Id. (stating a nuisance per se is “an activity, or an act, structure, instrument, or occupation which is a nuisance at all times and under any circumstances, regardless of location or surroundings” (internal quotation marks and citation omitted)). Holding the registered owner strictly and vicariously liable for speeding of a particular vehicle regardless of how the owner controlled the instrumentality of the nuisance, is contrary to nuisance jurisprudence. {66} More importantly, holding the owner strictly and vicariously liable for a speeding offense when the owner is not the driver bears no relationship whatsoever to abating the nuisance of speeding. The nuisance is defined in terms of the act of speeding and not the vehicle itself. Thus, under the very authorities cited by the majority in ¶ 19, I would invalidate STOP. See Green, 46 N.M. at 75, 120 P.2d at 621 (indicating that when it is “plain and palpable that there is no real or substantial relation between the ordinance and its object” the court may set it aside); Mitchell, 45 N.M. at 98, 111 P.2d at 44 (indicating that a city regulation may be set aside where it is plain that it “[has] no real relation to the object for which ostensibly [it was] enacted”). {67} I agree with the majority that it is appropriate for the City to exercise its governmental power to prohibit, punish, and prevent the use of an automobile to speed in violation of posted speed limits, because such use of an automobile clearly constitutes a danger to public safety. I could also agree that an owner should be responsible for the speeding if an owner permits or allows another person to drive the automobile, under circumstances where the owner knows or should know that it will be driven over posted speed limits. However, STOP and the majority go beyond these principles, when they equate ownership with use. In my view, this goes too far. {68} Furthermore, the overall structure of STOP makes it appear to be a scheme for raising revenues rather than to deter speeding. One need look no further than the “nomination” defense so heavily relied on by the majority. The registered owner who was not driving the car at the time of the violation has the option of accepting responsibility or identifying, by nomination, the actual driver. STOP, Section 7-ll-5(D)(3). This “defense” is available to any registered owner, including automobile rental businesses, automobile dealerships, and automobile lessors. STOP, Section 7-ll-5(D)(3)(a), (b), and (c). As I already pointed out, the owner is responsible for the fine in the event the “nominated” driver either denies driving or does not pay the STOP fine. Thus, individuals who rent automobiles from a ear rental company and customers test driving automobiles owned by a dealer can repeatedly commit STOP speeding violations, and STOP does not require the speeder to pay the STOP fine. Instead, STOP makes the car rental company or car dealer responsible for paying each STOP fine, not because they did anything wrong, but simply because they own the vehicle. {69} The majority relies on Idris to justify STOP’S money making objective. Majority Opinion ¶¶23, 25. However, I respectfully submit that Idris does not apply because it only addressed whether Chicago’s camera system for detecting cars that run red lights and make illegal turns violates the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. Idris, 552 F.3d at 565. The [United States] Constitution does not demand that units of state government follow state law. A federal court assumes that the action is authorized as a matter of local law and asks only whether federal law forbids what the city or state has done. Whether state law permits that action in the first place is a question for state courts, under their own law. Idris, 552 F.3d at 567 (citations omitted). In this case, however, we are presented with whether STOP violates New Mexico law in the first instance. Idris does not apply. Finally, I do not discuss the portion of STOP in which a STOP fine is issued after a CSD records a red light violation because that part of the ordinance is not before us in this case. CONCLUSION {70} By penalizing a person or entity which does nothing except merely own a vehicle which is driven by another person over the posted speed limit, STOP is contrary to New Mexico law and unconstitutional. Since the majority disagrees, I dissent.